UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

v.

                                              Criminal No. 14-20209
D-1 Demas Hernandez Cortez and       Honorable Sean F. Cox
D-2 Sarah Ann Calvetti,

       Defendants.
_____/

**OPINION AND ORDER REGARDING GOVERNMENT'S MOTIONS IN LIMINE (Docs. #49 and #50)**

In this action, Defendants Sarah Ann Calvetti (D2) ("Calvetti") and Demas Hernandez Cortez (D1) ("Cortez") (collectively, "Defendants") are charged in an Indictment (Doc. #10) with Conspiracy to Possess with Intent to Distribute and To Distribute Cocaine, Possession with Intent to Distribute More than 5 Kilograms of Cocaine, and Aiding and Abetting. Trial in this matter is scheduled to begin on Tuesday, December 9, 2014.

This matter is before the Court on the Government's Motion in Limine To Admit Only Portions of Defendant Cortez's Statements To Law Enforcement (Doc. #49) and Government's Motion in Limine and Notice of Intent To Offer 404(b) Evidence At Trial (Doc. #50). Defendant Calvetti responded to these motions on December 5, 2014. The Court heard oral arguments on the motions on December 8, 2014. As stated on the record, the Court shall GRANT the Government's Motion regarding Cortez's statements and DENY the Government's motion to introduce 404(b) evidence.

## BACKGROUND

**Factual Background Of Current Alleged Offenses**

Defendants were indicted in this action on April 8, 2014. (Doc. #10). The indictment charges Defendants with Conspiracy to Possess with Intent to Distribute and To Distribute Cocaine, in violation of 21 U.S.C. sections 846, 841(a)(1) and 841(b)(1)(A)(ii)(II); Possession with Intent to Distribute More than 5 Kilograms of Cocaine, in violation of 21 U.S.C. sections 841(a)(1) and 841(b)(1)(A)(ii)(II); and Aiding and Abetting, in violation of 18 U.S.C. section 2.

These charges follow a traffic stop and search of Defendants' vehicle. On March 26, 2014 at about 12:30 p.m., Trooper Ziecina was monitoring traffic on northbound I-75 in Monroe County, Michigan. At that time, Defendants Calvetti and Cortez were traveling northbound on Interstate 75 in Monroe County, Michigan in a blue minivan. Calvetti was driving the vehicle, and Cortez was her only passenger.

After observing Defendants' vehicle change lanes without signaling, and having determined that Defendants were driving below the speed limit, Trooper Ziecina pulled out of the median onto northbound I-75 and began following Defendants' vehicle. Once Trooper Ziecina had paced Defendants' vehicle for about a mile, he activated his emergency lights and initiated a traffic stop of Defendants' vehicle.

During the traffic stop, Trooper Ziecina asked Calvetti a series of questions regarding her identity, her travel plans, her vehicle, etc. Calvetti informed Trooper Ziecina that she was moving from Texas to Dearborn Heights, Michigan, that she was traveling with her boyfriend, Defendant Cortez, and that she drove a total of twenty-four (24) hours straight from Texas to Michigan without resting.

Several other suspicious circumstances came to light during the traffic stop, which are relevant only insofar as they gave Trooper Ziecina further cause to detain Defendants and execute the consent search of their vehicle. (*See* Opinion and Order Denying Motion to Suppress Evidence, Doc. #36 at 4-6). Approximately thirty-five (35) minutes into the traffic stop, Trooper Ziecina and one of his colleagues began searching Defendant's vehicle. After a lengthy search, Trooper Ziecina discovered sixteen (16) kilograms of cocaine stored in a trap floor inside the van's passenger compartment. Both Defendants were taken into custody.

While in custody, Defendant Cortez allegedly admitted to traveling to Mexico in early 2014 to purchase $257,000 worth of cocaine. Cortez also denied Calvetti's involvement in the smuggling scheme, stating that Calvetti "at no time had any idea of anything being in the van . . . she was just my girlfriend that I mislead [sic] to believing I was living a normal life." (Gvmt. Mo., Doc. #49, at 8).

**Calvetti's Prior Conviction for Marijuana Possession**

Defendant Calvetti has a prior conviction for possession of marijuana. On or about March 26, 2003, in United States District Court for the Western District of Texas, Defendant Calvetti pleaded guilty to possession of approximately 69.5 pounds of marijuana in violation of 21 U.S.C. section 844(a). (Gvmt. Mo., Doc. #50 at 4; Docket Report from *U.S. v. Calvetti*, Case No. 03-00009, Doc. #50 at Ex. 1).

In that case, Defendant Calvetti rented a blue Chevrolet Suburban from B&W Auto Sales in Del Rio, Texas on December 6, 2002. (Gvmt. Mo., Doc. #50, at 4; ICE Report, Doc. #50 at Ex. 2). Calvetti stated that she intended to use the vehicle to travel to San Antonio, Texas. Calvetti returned the vehicle after having accrued approximately 1,000 miles on the odometer—which

apparently amounts to more miles than would be expected for a trip from Del Rio, Texas to San Antonio, Texas and back.

On December 12, 2002, Calvetti returned to B&W Auto and requested to rent the same blue Chevrolet Suburban. This request aroused the suspicion of B&W Auto, which caused them to contact U.S. Customs. U.S. Customs conducted a K-9 search of the vehicle, and the K-9 alerted to the presence of narcotics in the Suburban's center console. The vehicle had not been rented to any other customer since Calvetti had returned it. Calvetti rented the blue Chevy Suburban for a second time; U.S. Customs initiated surveillance on the vehicle after Calvetti picked it up.

On December 13, 2002, Calvetti and a man, Cheyenne Talamantes ("Talamantes"), traveled in the rented Suburban to the U.S. Border checkpoint at Cline, Texas. Calvetti was the driver and Talamantes was her only passenger. Border patrol agents stopped Calvetti's rented vehicle and a K-9 search lead to their discovery of 69.5 pounds of marijuana in the center console and under the hood of the vehicle, as well as in suitcases in the passenger compartment. Prior to that search, Calvetti admitted that she owned the luggage. Defendant Calvetti and Talamentes were taken into custody.

According to the Government, Talamantes made several post-*Miranda* statements to law enforcement, including that 1) he was Calvetti's boyfriend; 2) he and Calvetti were traveling to San Antonio, Texas because she had to go to work; 3) Calvetti did not know anything about the marijuana that was in the vehicle. The Government states that it will not seek to admit Talamantes' post-arrest statements at this trial.

**Government's Motion in Limine to Admit Only Some Portions of Cortez's Post-Arrest Statements to Officers**

The Government has filed a motion in limine seeking to admit certain of Defendant Cortez's

post-*Miranda* statements to law enforcement. The Government intends to introduce Cortez's statements and/or admissions to establish his guilt, presumably as statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A).

Further, the Government seeks a pretrial ruling limiting the admissibility of Cortez's statements, and prohibiting Cortez and/or Calvetti from offering Cortez's exculpatory statements. The Government maintains that Cortez's statements asserting Calvetti's lack of knowledge, when not offered by the Government, are inadmissible hearsay not subject to any exception. The Government further argues that the Rule of Completeness does not require admission of the statements at issue.

Defendant Calvetti concurs in the relief sought by this motion. (Doc. #52). Defendant Cortez did not file a response. At oral argument, Defendant Cortez stated that he has no objections to the Government's Motion in Limine regarding his post-arrest statements.

**Government's Motion in Limine to Introduce 404(b) Evidence**

The Government maintains that, throughout the course of pretrial proceedings in this case, Defendants have consistently taken the position that Defendant Calvetti did not know that cocaine was stored in the van. The Government posits, and Defendant Calvetti admits, that Defendant Calvetti will assert lack of knowledge as a defense at trial.

The Government has filed a Motion in Limine and Notice of Intent to Offer 404(b) Evidence (Doc. #50). In its motion, the Government requests that the Court admit evidence of Defendant Calvetti's 2003 drug offense pursuant to Federal Rule of Evidence 404(b) if she argues at trial that she had no knowledge of the cocaine found in her minivan.

Defendant Calvetti responds that the 2003 prior conviction should not be admitted because

it is "remote in time to the events in this case." (Calvetti Resp., Doc. #52). Calvetti argues that admission of the evidence is not probative, and will do nothing more than offer the jury "an impermissible inference that [Calvetti] has a tendency to become involved with narcotics." (Doc. #52).

## ANALYSIS

### I. Admissibility of Cortez's Statements (Doc. #49)

Federal Rule of Evidence 106, entitled "Remainder of or Related Writings or Recorded Statements," provides that

> [i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.

*Ibid.* The "Rule of Completeness," codified in Rule 106, "allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *U.S. v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013), quoting *U.S. v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009).

Rule 106 "is not designed to make something admissible that should be excluded." *U.S. v. Miller*, 562 Fed. App'x 272, 291 (6th Cir. 2014), quoting *U.S. v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). Thus, the Sixth Circuit has held that "exculpatory hearsay may not come in solely on the basis of completeness."[1] *Adams*, 722 F.3d at 826, quoting *U.S. v. Shaver*, 89 Fed. App'x 529,

---

[1] One Sixth Circuit panel has forecasted its willingness to reverse course on its interpretation of Rule 106, and to interpret Rule 106 to allow introduction of otherwise inadmissible exculpatory hearsay statements. As it stands, however, binding Sixth Circuit case law does not permit the introduction of hearsay through Rule 106 unless it also falls under an exception or exclusion to the hearsay rule. *Adams*, 722 F.3d at 826 fn 1 (acknowledging that several legal scholars have criticized the Sixth and other Circuits' interpretation of Rule 106).

533 (6th Cir. 2004).

"In ruling on a Rule 106 request to supplement a statement, the district court must determine '(1) whether the additional evidence explains the evidence already admitted; (2) whether it places the admitted evidence in its proper context; (3) whether its admission will serve to avoid misleading the trier of fact; and (4) whether its admission will insure a fair and impartial understanding of all of the evidence.'" *Miller*, 562 Fed. App'x at 291, quoting *U.S. v. McAllister*, 693 F.3d 572, 584 (6th Cir. 2012).

The Government intends to offer Cortez's post-arrest admissions against him pursuant to Federal Rule of Evidence 801(d)(2)(A). *Ibid.* (excluding statements of a party-opponent from definition of hearsay). Apparently, Cortez admitted to traveling to Mexico to purchase cocaine and storing the cocaine in co-Defendant Calvetti's vehicle. The Government argues that, if it offers these portions of Cortez's post-arrest statement, Defendants should not be permitted to offer other portions of Cortez's statement concerning Calvetti's lack of knowledge of the cocaine. The Government maintains that Cortez's other statements are inadmissible hearsay if offered by Defendants and, therefore, inadmissible under Rule 106.

The Court agrees with the Government's analysis on this issue. Defendants both concur in the Government's motion as well. As previously discussed, Rule 106 does not provide for the admission of otherwise inadmissible evidence. The Government can offer into evidence Cortez's post-arrest statements because they are not hearsay; rather, they are statements of a party-opponent that are excluded from the definition of hearsay. Fed. R. Evid. 801(d)(2)(A).

Based on the foregoing, the Court shall GRANT the Government's Motion in Limine to Admit Only Portions of Defendant Cortez's Post-Arrest Statements (Doc. #49), permit the

Government to admit Cortez's admissions at trial pursuant to Federal Rule of Evidence 801(d)(2)(A), and preclude Defendants from offering other portions of Cortez's post-arrest statement because they would constitute inadmissible hearsay pursuant to Fed. R. Evid. 802.

## II.     Admissibility of Calvetti's Prior Drug Offense Pursuant to 404(b) (Doc. #50)

The Government seeks to introduce evidence of Defendant Calvetti's 2003 conviction for marijuana possession. The Government recognizes that it must first satisfy the requirements of Federal Rule of Evidence 404(b).

Federal Rule of Evidence 404(b) prohibits the admission of "evidence of a crime, wrong, or other act" at trial when that evidence is used to "show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is admissible for other purposes, however, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2).

The Court must apply a three-step analysis to evaluate the admissibility of Rule 404(b) evidence. *U.S. v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). First, the party offering the evidence must demonstrate that other bad acts occurred. *Id.*, citing *U.S. v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994).

The offering party must then cite a specific purpose for which the evidence is offered. *Id.* In offering 404(b) evidence, "the government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008). Essentially, the offering party must prove that the evidence is probative of a material issue other than character. *Hardy*, 228 F.3d at 750.

8

Third, the Court must find that the evidence's probative value is not substantially outweighed by the damage of unfair prejudice. *See* Fed. R. Evid. 403.

### 1. Proof That Other Bad Acts Occurred

The Government intends to establish Calvetti's prior commission of marijuana possession by offering the testimony of the arresting officer in the 2002-03 case, as well as her statements to Trooper Ziecina and Cortez, her prior arrest report, and her conviction record. (Gvmt. Mo., Doc. #50, at 8). The parties do not seriously dispute whether this evidence will be sufficient to establish the facts and circumstances resulting in Calvetti's 2003 conviction; furthermore, the Court finds that the Government's cited evidence would likely be sufficient in this regard.

### 2. Offered For Proper Purpose

"Other acts" evidence is only admissible if it can be offered to prove something other than character. *U.S. v. Freeman*, 412 Fed. App'x 735, 744 (6th Cir. 2010). "Other acts evidence satisfies this second step in the admissibility analysis where (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Id.*, citing *U.S. v. Johnson*, 27 F.3d 1185, 1190-91 (6th Cir. 1994).

The Government argues that the proffered evidence is admissible under Rule 404(b) because it 1) is evidence of Defendant Calvetti's general and specific intent to commit possession with intent to distribute cocaine, and to conspire with Cortez to do the same; 2) shows that she had knowledge that the cocaine was in her vehicle and knowledge of the conspiracy, and 3) demonstrates her plan and method of operation. (Gvmt. Mo., Doc. #50, at 8).

#### A. General/Specific Intent to Distribute Cocaine, and to Conspire To Distribute Cocaine

9

The Government argues that Calvetti's 2003 conviction for possession of marijuana should be admitted to prove her intent to distribute cocaine. Calvetti has pleaded not guilty to all charges in this case.

To determine whether evidence of prior bad acts is probative of intent to distribute, the Court must "look to whether the evidence relates to conduct that is substantially similar and reasonably near in time' to the specific intent offense at issue." *Freeman*, 412 Fed. App'x at 745 (citations omitted). There is no "maximum number of years" that can exist between a prior act and the charged offense. *Id.*

The Government correctly points out that the Sixth Circuit has repeatedly found prior drug convictions admissible to prove specific intent to distribute. *U.S. v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007) (evidence of drug-related activity admissible under 404(b) to prove intent to distribute drugs); *U.S. v. Maudlin*, 109 F.3d 1159, 1161 (6th Cir. 1997) (same); *U.S. v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997) (same); *U.S. v. Johnson*, 27 F.3d 1186, 1193 (1994) (same); *U.S. v. Ray*, 549 Fed. App'x 428, 433 (6th Cir. 2013) ("[Defendant] concedes, as he must, that because he was charged with a specific-intent crime the prosecution may submit other-acts evidence in order to demonstrate intent."); *U.S. v. Hardy*, 643 F.3d 143, 152 (6th Cir. 2011) ("This court has repeatedly recognized that prior drug-distribution evidence is admissible [under Rule 404(b)] to show intent.") (citations and quotations omitted)).

Calvetti argues that the prior bad acts evidence is not reasonably near in time to the specific intent offense at issue in this case. Calvetti's previous conviction occurred in 2003, approximately eleven years ago.

With regard to this segment of the 404(b) analysis, the Court finds that Calvetti's specific

argument must be rejected here. The Sixth Circuit has noted, with approval, that "other courts have found no error in the admission of prior bad acts ranging from eight years old to eighteen years old." *U.S. v. Love*, 254 Fed. App'x 511 (6th Cir. 2007) (collecting cases). Additionally, at least two Sixth Circuit cases have held that an eight-year time gap was not too remote to be admitted as 404(b) evidence. *Id.* Thus, it does not appear that Calvetti's prior criminal activity is so remote that it should not be admitted on that basis alone. The Court finds that Calvetti's prior conviction would be admissible for the purpose of proving intent.

### B. Knowledge of Cocaine in Vehicle

The Government acknowledges that, in order to prove the conspiracy charge under 21 U.S.C. section 846 as to Calvetti, it must prove that she "had knowledge of the conspiracy's object and consciously committed [her]self to the furtherance of that object." *U.S. v. Caver*, 470 F.3d 220, 233 (6th Cir. 2006). Defendant Calvetti admits that her knowledge (or lack thereof) about the cocaine in the van will be an issue at trial.

The Government claims that the Sixth Circuit has previously upheld the admission of evidence of prior criminal conduct to establish knowledge of a later, unrelated conspiracy. (Gvmt. Mo., Doc. #50, at 11, citing *U.S. v. Gaitain-Acevedo*, 148 F.3d 577, 592 (6th Cir. 1998)). However, the Court finds that the Government overstates the 404(b) holding in *Gaitain-Acevedo*. In *Gaitain-Acevedo*, the Court upheld admission of a recorded conversation the defendant had with his co-conspirator's wife even though the conversation arguably contained evidence of defendant's prior conviction. *Id.* The Sixth Circuit upheld admission of the statement in spite of the defendant's 404(b) challenge, even "assuming the taped conversation presents evidence of a prior criminal act," because the conversation otherwise demonstrated defendant's knowledge of the conspiracy. *Id.* In

other words, the Sixth Circuit found that the conversation was offered for a permissible purpose, i.e. to prove defendant's knowledge of the conspiracy, *despite* potentially containing evidence of defendant's prior criminal conviction. *Id.*

The evidence offered in this case looks much more like character evidence than that offered in *Gaitain-Acevedo*. Here, the Government seeks to introduce evidence of Calvetti's prior conviction *in order to prove* her knowledge of the conspiracy; in *Gaitain-Acevedo*, the government offered defendant's statements from which his knowledge of the conspiracy could be inferred, *despite* the statement also intimating that he had a prior conviction. The Court finds that *Gaitain-Acevedo* does not command admission of the evidence.

The Government also cites to *U.S. v. Hofstatter*, 8 F.3d 316, 323 (6th Cir. 1993) for the proposition that "prior drug manufacturing was probative of defendant's knowledge of current drug manufacturing." (Gvmt. Mo., Doc. #50 at 11). In *Hofstatter*, the Sixth Circuit held that evidence of defendant's prior knowledge of the manufacturing process for 4-methylaminorex was probative of defendant's involvement in the charged offense, to wit, manufacture of methylaminorex. *Id.* The Sixth Circuit's 404(b) holding in *Hofstater* makes no mention of knowledge of the existence of a conspiracy.

In the Government's other cited case, *U.S. v. Feinman*, the Sixth Circuit upheld the admission of evidence showing that defendant had been involved in a prior marijuana shipment when that evidence "was introduced to illustrate that [defendant] was involved in an ongoing scheme to transport large amounts of marijuana from California to . . . Ohio." 930 F.2d 495, 499 (6th Cir. 1991). The Sixth Circuit further explained that "this prior act was similar to, and sufficiently near in time to, the offenses charged in the indictment . . . [t]his transaction also involved the same

participants and involved the same mode of operation as was charged in the indictment." *Id.*

The 404(b) evidence introduced in *Feinman* is distinguishable from the Government's proffered evidence here because Calvetti's prior bad act is more remote in time, is not nearly identical to the offenses charged in the indictment, does not involve the same participants, and is not even arguably connected to the charged conspiracy in this case.

The Court is not convinced that Calvetti's 2003 marijuana conviction is probative of her knowledge of the charged conspiracy at issue, without the jury resorting to the inference of "once a drug dealer, always a drug dealer."

### C. Plan/Method of Operation

The Government argues that the proffered evidence can be offered to show Calvetti's *modus operandi.*

*Modus operandi* evidence is used in cases in which the identity of the perpetrator of the crime charged is in issue. *See Johnson*, 27 F.3d at 1194 ("In cases in which the identity of the perpetrator of the crime charged is in issue, evidence that the defendant committed other acts utilizing the same modus operandi . . . is admissible as tending to prove the defendant committed the crime charged."). Here, Defendant Calvetti's identity is not at issue. Additionally, the Government has not shown or argued that Calvetti's actions are so unique as to constitute the type of signature behavior usually associated with *modus operandi* evidence. The Court finds that *modus operandi* is an inappropriate purpose for which to offer the proffered 404(b) evidence.

### 3. Fed. R. Evid. 403 Analysis

Finally, the Court must find that the evidence's probative value is not substantially outweighed by the damage of unfair prejudice. *See* Fed. R. Evid. 403. "Pursuant to Rule 403, a

prior bad act that complies with Rule 404(b) is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *U.S. v. Love*, 254 Fed. App'x 511, 517 (6th Cir. 2007).

This Court has broad discretion in making a Rule 403 determination. *U.S. v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). Rule 403 contemplates unfair prejudice, i.e. prejudice "which tends to suggest decision on an improper basis." *Id.* Unfair prejudice does not include "damage to a defendant's case that results from the legitimate force of probative evidence." *Id.*

Calvetti argues that her 2002 conduct, which lead to a 2003 conviction, is too remote in time to be probative in this case. (Calvetti Resp., Doc. #52, at 2). Defendant further argues that the prior bad acts evidence "cannot pass a balancing test of Fed. R. Evid. 403 because of the danger of the jury making an impermissible propensity inference." (Calvetti Resp. at 5).

The Court finds that Rule 403 balancing test falls in Calvetti's favor. First, the Court finds that the probative value of her prior conviction is minimal. Calvetti's conviction for simple possession conviction is approximately eleven years old, does not involve cocaine, and has no relation whatsoever to this case. Even taking into consideration any appropriate limiting instruction, the Court finds that the 404(b) evidence is most likely to induce the jury to infer that because Calvetti has possessed drugs in the past, she also possessed drugs in the present case. *See U.S. v. Bell*, 516 F.3d 432, 445 (6th Cir. 2008) ("Bell's prior distribution of drugs several years prior to the instant offense does not necessarily imply that he was intending to possess and distribute drugs on this occasion. The only way that such evidence would be probative is if the jury were permitted to infer that because Bell has distributed drugs in the past, it is likely that he was doing so in the

14

present case.").

Moreover, as the Government conceded at oral argument, it has alternative means of proving Calvetti's intent. "A district court weighing the probative value of other acts evidence should consider the government's alternative sources of proving intent." *U.S. v. Freeman*, 412 Fed. App'x 735, 746 (6th Cir. 2010). In *Freeman*, the Court held that "the sheer volume and street value of the drugs suggests that whoever possessed them intended to distribute them . . . [t]his alternative evidence of intent diminished the government's need to introduce [defendant's] prior conviction at trial." *Id.* Here, Calvetti is charged with possessing with intending to distribute over fifteen kilograms of cocaine. These amounts alone can establish the 'intent to distribute' charge.

The Government will also offer evidence that, during a consent search of Calvetti's Dearborn Heights, Michigan home, law enforcement found several products indicative of drug trafficking such as plastic wrap, plastic bags, dryer sheets, tubes of grease, rubber bands. This evidence can also be used to show intent.

Because the Court finds the probative value of the 404(b) evidence to be minimal, the heavy risk of prejudice outweighs its minimal probative value. "Evidence of a defendant's prior crimes 'unquestionably has a powerful and prejudicial impact.'" *Bell*, 516 F.3d at 446, quoting *Johnson*, 27 F.3d at 1193. To paint Calvetti as a repeat drug offender would "greatly increas[e] the chance that the jury would punish [her] not for [her] involvement in the offense at issue, but rather because [she] appeared to be a 'bad'" person. *Id.* The Court shall DENY the Government's motion to admit 404(b) evidence based on Calvetti's prior conviction.

**CONCLUSION & ORDER**

For the reasons set forth above, which are based on the pre-trial submissions and representations made to this Court, IT IS ORDERED that the Government's Motion in Limine To Admit Only Portions of Defendant Cortez's Statements To Law Enforcement (Doc. #49) is GRANTED and Government's Motion in Limine and Notice of Intent To Offer 404(b) Evidence At Trial (Doc. #50) is DENIED.

**IT IS SO ORDERED.**

                                                    S/Sean F. Cox
                                                    Sean F. Cox
                                                    United States District Judge

Dated: December 8, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 8, 2014, by electronic and/or ordinary mail.

                                                    S/Jennifer McCoy
                                                    Case Manager